UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—GENERAL

| | | | |
|---|---|---|---|
| Case No. | **EDCV 16-1659 JGB (KKx)** | Date | May 2, 2017 |
| Title | *Karen Cobb v. Ocwen Loan Servicing, LLC, et al.* | | |

| | |
|---|---|
| Present: The Honorable | JESUS G. BERNAL, UNITED STATES DISTRICT JUDGE |

| MAYNOR GALVEZ | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:** Order (1) DENYING the Motion to Dismiss Plaintiff's Second Amended Complaint by Caliber Home Loans, Inc. (Dkt. No. 37); (2) GRANTING the Motion to Dismiss Plaintiff's Second Amended Complaint by Ocwen Loan Servicing, LLC (Dkt. No. 38); and (3) VACATING the hearing on May 8, 2017 (IN CHAMBERS)

Before the Court are two motions: (1) Motion to Dismiss Plaintiff's Second Amended Complaint by Defendants Caliber Home Loans, Inc. (Dkt. No. 37); and (2) Motion to Dismiss Second Amended Complaint by Defendant Ocwen Loan Servicing, LLC. (Dkt. No. 38.) The Court finds these matters suitable for resolution without a hearing. See Fed. R. Civ. P. 78; L.R. 7-15. After consideration of the papers filed in support of and in opposition to the motions, the Court DENIES the Motion to Dismiss by Caliber Home Loans, Inc., GRANTS the Motion to Dismiss by Ocwen Loan Servicing, LLC, and VACATES the hearing on May 8, 2017.

## I. BACKGROUND

On June 15, 2016, Plaintiff Karen Cobb ("Plaintiff") filed a complaint against Defendants Ocwen Loan Servicing, LLC ("Ocwen") and Caliber Home Loans, Inc. ("Caliber") in Riverside Superior Court. ("Complaint," Dkt. No. 1-1.) The Complaint alleged four causes of action: (1) breach of contract; (2) deceit; (3) breach of mortgagee's duty; and (4) declaratory relief. (Id.) Defendants removed the action to this Court on July 7, 2016. (Dkt. No. 1.)

Caliber and Ocwen filed their initial motions to dismiss on August 5, 2016, (Dkt. No. 7), and September 2, 2016, (Dkt. No. 11), respectively. The Court granted both motions and

dismissed the Complaint with leave to amend on December 9, 2016. (Dkt. No. 18.) Plaintiff filed a First Amended Complaint ("FAC") on January 4, 2017. ("FAC," Dkt. No. 20.)

The FAC alleged two causes of action against Defendants: (1) breach of contract; and (2) violation of the Fair Credit Reporting Act ("FCRA"). (FAC at 1.) Defendants concurrently filed Motions to Dismiss Plaintiff's First Amended Complaint on January 18, 2017. (Dkt. Nos. 23, 24.) Caliber also filed a Motion to Strike Portions of Plaintiff's First Amended Complaint on January 18, 2017. (Dkt. No. 25.) On February 21, 2017, the Court again granted both motions and dismissed the FAC without leave to amend as to the first claim and with leave to amend as to the second claim. (Dkt. No. 32.) Plaintiff filed a Second Amended Complaint ("SAC") on March 6, 2017. ("SAC," Dkt. No. 34.)

The SAC alleged a single cause of action for violation of the FCRA. (SAC at 1.) Defendants again concurrently filed Motions to Dismiss on March 20, 2017. ("Caliber Motion," Dkt. No. 37; "Ocwen Motion," Dkt. No. 38.) In support of its motion, Caliber filed a Request for Judicial Notice.[1] (Dkt. No. 37-2.) Plaintiff opposed both motions on March 29, 2017. ("Opposition to Caliber Motion," Dkt. No. 40; "Opposition to Ocwen Motion," Dkt. No. 41.) Ocwen filed its reply memorandum on April 4, 2017, ("Ocwen Reply," Dkt. No. 42), while Caliber filed its reply memorandum on April 11, 2017. ("Caliber Reply," Dkt. No. 43.)

## II.  LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)"), a party may bring a motion to dismiss for failure to state a claim upon which relief can be granted. As a general matter, the Federal Rules require only that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957) (quoting Fed. R. Civ. P. 8(a)(2)); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). When evaluating a Rule 12(b)(6) motion, a

---

[1] A court may take judicial notice of an adjudicative fact not subject to "reasonable dispute," either because it is "generally known within the territorial jurisdiction of the trial court," or it is capable of accurate and ready determination by resort to "sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. Judicial notice is appropriate for "materials incorporated into the complaint or matters of public record." Coto Settlement v. Eisenberg, 593 F.3d 1031, 1038 (9th Cir. 2010). Proceedings of other courts, including orders and filings, are also the proper subject of judicial notice when directly related to the case. See United States ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc., 971 F.2d 244, 248 (9th Cir. 1992) (stating that courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue.") Here, Caliber requests judicial notice of four documents: Deed of Trust, the Docket Report for Plaintiff's Chapter 11 Bankruptcy Petition, the Notice of Default, and the Full Reconveyance. (Dkt. No. 37-2 Ex. A-D.) Because these documents are in the public record, the Court finds they are proper subjects for judicial notice. Therefore, the Court GRANTS Caliber's Request for Judicial Notice.

court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party. See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted). Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556). The Ninth Circuit has clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

### III. FACTUAL ALLEGATIONS

Plaintiff owned a parcel of real property at 15054 Bay Hill Drive, Moreno Valley, California 92555 (the "Property") from May 18, 2005 to May 25, 2016. (SAC ¶ 8.) Plaintiff financed the acquisition of the Property through a loan from Countrywide Bank, which was the beneficiary of a Note and Trust Deed loan secured by the Property in the amount of approximately $320,000 (the "Loan"). (Id.)

In 2009, Plaintiff filed for Chapter 11 Bankruptcy. (Id.) Plaintiff performed pursuant to a payment plan approved by the Bankruptcy Court, and the Chapter 11 Bankruptcy was discharged in January 2012. (Id.)

On or about July 9, 2012, the Trust Deed for the Property was assigned to Ocwen. (Id.) After Ocwen began servicing the Loan, an accounting dispute arose. (Id. ¶ 9.) Ocwen claimed that Plaintiff owed a deficiency of $19,000 on the Loan, while Plaintiff claimed she was current on the Loan pursuant to the Chapter 11 Bankruptcy payment plan. (Id.) Plaintiff successfully moved to re-open the Chapter 11 Bankruptcy in or around July 2013. (Id. ¶ 10.) Plaintiff then filed a Motion for an Order to Show Cause why Ocwen should not be held in contempt for violating 11 U.S.C. § 524(a)(2), (i) and 11 U.S.C. § 105. (Id.) As part of her motion, Plaintiff

alleged multiple accounting and billing actions, as well as other wrongful conduct. (Id.) Plaintiff claims the contempt alleged was substantial, and if proven, would have resulted in substantial liability for Ocwen. (Id.)

In July 2014, in exchange for Plaintiff dismissing her contempt action, Ocwen agreed to pay damages and permanently modify her loan. (Id. ¶ 11.) Plaintiff alleges the permanent modification agreed to entailed Ocwen eliminating the $19,000 deficiency and adjusting the Loan balance to approximately $180,000. (Id.) In August 2014, Ocwen provided Plaintiff a copy of its modified records that showed a credit of $19,000 and a balance of $180,000 as of July 11, 2014. (Id. ¶ 12.) Ocwen also provided Plaintiff with a copy of an Automated Universal Data Form ("AUD") which showed Plaintiff as current on the Loan, with zero amount past due as of July 17, 2014. (Id.) The parties executed a Confidential Settlement Agreement (the "Agreement") on September 18, 2014, which Plaintiff alleges memorialized the parties' intent to permanently modify the Loan and resolve the accounting dispute. (Id. ¶ 13.) The Agreement binds Plaintiff and Ocwen, as well as their administrators, representatives, successors, and assigns. (Id.) Plaintiff asserts she faithfully tendered the monthly payment for the Loan following the execution of the Agreement. (Id. ¶ 14.)

On June 22, 2015, Ocwen informed Plaintiff of a discrepancy between their internal accounting records and her current status as reported to the credit reporting agencies ("CRAs"). (Id. ¶ 21.) Plaintiff disputed the discrepancy with Experian Credit Agency ("Experian") in Costa Mesa, California on approximately August 13, 2015. (Id.) Plaintiff received a letter from Ocwen acknowledging the dispute on August 27, 2015. (Id. ¶ 22, Ex. 3.) The letter states in relevant part:

> You advised Ocwen was supposed to make the account current as part of the [settlement] agreement.
>
> Research determined the terms of the settlement agreement were the following. The escrow account was to be reconciled to reflect no default but that you would be responsible to maintain all escrow payments going forward. You were to be paid $22,000.00 for damages and Ocwen agreed to report the loan as current via an Automated Universal (AUD) form.
>
> Review determined these requirements have been completed. The settlement did not include provisions to advance the due date on the account making it internally current with Ocwen.

(Id. Ex. 3.) On approximately September 15, 2015, Ocwen assigned its interest in the Loan to Caliber. (Id. ¶ 15.) Thereafter, Caliber demanded Plaintiff pay the deficiency and commenced a non-judicial foreclosure based on the deficiency. (Id. ¶ 16.)

In a credit report from Experian dated February 18, 2016, Plaintiff was reported as 180 days past due as of January 2016 with Caliber, while Ocwen reported Plaintiff was current with a

zero balance. (Id. ¶ 27.) Plaintiff disputed the report as inaccurate with Experian on February 18, 2016, and claimed that Caliber's reporting was inconsistent with Ocwen's because of the Agreement, which nullified past due amounts claimed by Caliber. (Id. ¶ 28.) On March 1, 2016, Plaintiff learned from Experian that Caliber claimed its report was accurate and refused to change it. (Id. ¶ 29.) Plaintiff maintains Caliber's inaccurate reporting prevented Plaintiff from refinancing her mortgage and caused damages. (Id. ¶ 30.)

On March 1, 2016, Experian also informed Plaintiff that Ocwen had changed its reporting for February 18, 2016 such that Plaintiff was reported past due from October 2014 to April 2015. (Id. ¶ 33, Ex. 3.) Plaintiff disputed Ocwen's reporting to Experian on March 10, 2016. (Id. ¶ 34.) Ocwen refused to change the report. (Id.)

Plaintiff sold the Property and paid Caliber the full demand under protest on May 25, 2016. (Id. ¶ 17.) Plaintiff's protest was as to the deficiency Ocwen agreed to eliminate but did not; the deficiency increased to $21,450.00 by the time of payment. (Id. ¶ 17.)

On June 29, 2016, in correspondence sent by Ocwen to Plaintiff, Ocwen maintains that it fulfilled the terms and conditions of the Agreement and reiterates that the Agreement did not require it to advance the due date internally. (Id. Ex. 4 at 1.) Additionally, Ocwen indicates that while all fees and charges accrued during its service period were waived, there were fees and charges carried over from when it was transferred from Bank of America, N.A. in 2012, which were not waived or otherwise credited to Plaintiff's account. (Id.) Additionally, Ocwen states that it re-submitted an AUD to reflect Plaintiff's account as current for the entire period during which they serviced the Loan, in order to further comply with the Agreement. (Id. at 2.)

On June 30, 2016, Caliber sent a letter to Plaintiff. (Id. Ex. 5.) The letter indicated that Caliber worked with Ocwen to investigate the matter and provided information similar to that already provided to Plaintiff by Ocwen. (Id. at 2.) Caliber states that its last report to the CRAs occurred on February 10, 2016 and reflected Plaintiff's account status at that time – "Open/Delinquent 180 days." (Id.) Caliber then indicates that the next reporting would reflect the account as paid, but no additional changes would be made because it had determined that its reporting accurately reflected Plaintiff's status. (Id. at 2-3.)

Plaintiff obtained her credit report again on November 30, 2016. (Id. ¶ 37.) That report showed that Caliber reported Plaintiff more than 180 days late as of June 2016. (Id.) Plaintiff disputed the report with Experian on the basis that the Loan had been paid off following the sale of the Property in May 2016. (Id.) Plaintiff also advised Experian that Caliber's June 30, 2016 letter conflicted with the reported status. (Id.) Caliber informed Experian that no changes would be made to its reporting on December 19, 2016. (Id. ¶ 38.) Plaintiff claims Caliber's reporting prevented Plaintiff from refinancing a real estate loan and qualifying for a loan modification. (Id.)

//

## IV.  DISCUSSION

Plaintiff brings a single cause of action for violation of the FCRA.  (SAC at 1.)  The FCRA was enacted in part to ensure fair and accurate credit reporting.  15 U.S.C. § 1681; Safeco Ins. Co. of Am. V. Burr, 551 U.S. 47, 52 (2007).  To achieve this, the FCRA imposes various duties on "furnishers"—entities that provide credit information to CRAs.  Section 1681s-2(a) establishes the duty "to provide accurate information," "to correct and update information," and "to provide notice of dispute," among others.  15 U.S.C. § 1681s-2(a)(1)-(3).  Duties established by § 1681s-2(a) are enforceable by federal or state agencies only.  Id. § 1681s-2(d) (providing that subsection (a) "shall be enforced exclusively under section 1681(s) of this title by the Federal agencies and official and the State officials identified in that section.")

Section 1681s-2(b) imposes additional duties upon furnishers of information, which are triggered "upon notice of dispute"—"that is, when a person who furnished information to a CRA receives notice from the CRA that the consumer disputes the information."  Id. §1681s-2(b).  Specifically, after receiving notice of a dispute a furnisher of information is required to:

> (A) conduct an investigation with respect to the disputed information;
> (B) review all relevant information provided by the consumer reporting agency . . . ;
> (C) report the results of the investigation to the consumer reporting agency;
> (D) if the investigation finds that the information reported is incomplete or inaccurate, report those results to all other consumer reporting agencies to which the person furnished the information …; and
> (E) if an item of information disputed by a consumer is found to be inaccurate or incomplete or cannot be verified after any reinvestigation under paragraph (1) . . . (i) modify . . . (ii) delete [or] (iii) permanently block the reporting of that item of information [to the CRAs].

Id. § 1681s-2(b)(1).  Importantly, "[t]hese duties arise only after the furnisher receives notice of dispute from a CRA; notice of a dispute received directly from the consumer does not trigger furnishers' duties under subsection (b)."  Gorman v. Wolpoff & Abramson, LLP, 584 F.3d 1147, 1154 (9th Cir. 2009) (relying on § 1681s-2(b) and Nelson v. Chase Manhattan Mortgage Corp., 282 F.3d 1057, 1059-60 (9th Cir. 2002)).  Duties established by § 1681s-2(b) are enforceable by a private right of action for willful or negligent noncompliance with the FCRA requirements.  15 U.S.C. §§ 1681n, 1681o; see also § 1681s-2(c) ("Except [for circumstances not present here], sections 1681n and 1681o of this title do not apply to any violation of . . . subsection (a) of this section, including any regulations issued thereunder.")  Thus, to state a claim under the FCRA, "a plaintiff must show that (1) he found an inaccuracy in his credit report, (2) he notified a credit reporting agency, (3) the credit reporting agency notified the furnisher of the information about the dispute, and (4) the furnisher failed to investigate the inaccuracies or otherwise failed to comply with the requirements of 15 U.S.C. 1681s-2(b)(1)(A)-(E)."  Biggs v. Experian Information Solutions, Inc., 209 F. Supp. 3d 1142, 1143 (N.D. Cal. 2016).

Here, Plaintiff asserts four counts of its FCRA claim.  (SAC ¶¶ 21-45.)  Counts One and Three pertain to Ocwen's reporting, while Counts Two and Four pertain to Caliber's reporting.  (Id.)  The Court addresses each count below.

**A.  Count One**

In Count One, Plaintiff alleges Ocwen violated § 1681s-2(a)(1)(A) and § 1681s-2(a)(1)(B)(ii) by "intentionally generating an AUD that did not reflect its internal records."  (Id. ¶ 25.)  Plaintiff also alleges Ocwen knowingly violated § 1681s-2(a)(2) by "reporting the Plaintiff current and leaving the company internal records delinquent."  (Id. ¶ 26.)  To support her allegations, Plaintiff points to the following: (1) the AUD submitted by Ocwen pursuant to the Agreement reporting Plaintiff as current; (2) the August 27, 2015 letter from Ocwen wherein Ocwen indicates the Agreement did not require it to "advance the due date on the account making it internally current with Ocwen;" (3) the June 29, 2016 letter from Ocwen that represents the same thing; and (4) the June 30, 2016 letter from Caliber.  (Id. Exs. 1, 3-5.)  Plaintiff also alleges she disputed the discrepancy with Experian on about August 13, 2015.  (Id. ¶ 21.)  Plaintiff maintains "Ocwen refused to correct its internal records, refused to report the status of the loan as disputed by Plaintiff, and refused to report that Ocwen was showing Plaintiff delinquent in its internal records."  (Id. ¶ 22.)

Ocwen argues Count One fails on multiple grounds.  First, Ocwen argues Plaintiff does not allege she disputed Ocwen's reporting; instead, Plaintiff alleges she disputes the discrepancy between Ocwen's internal accounting records that showed she was delinquent and Ocwen's reporting that she was current on the Loan.  (Ocwen Mot. at 6-7.)  Second, Ocwen contends Plaintiff does not allege Experian, or any other CRA, notified Ocwen of Plaintiff's dispute.  (Id. at 7.)  Third, Ocwen claims Plaintiff lacks standing because she cannot allege an injury based on a credit report that shows she is current, even if that information is inaccurate.  (Ocwen Reply at 3.)  In response, Plaintiff asserts that Ocwen plainly admits to reporting incomplete and inaccurate information and contends it is highly likely Experian notified Ocwen of her dispute because her March 1, 2016 credit report indicates that it was "updated from our processing of your dispute in August of 2015."  (Opp'n to Ocwen Mot. at 5; SAC Ex. 6.)  The Court agrees with Ocwen.

Because "a consumer cannot sue a furnisher based simply on the communication of inaccurate information," a plaintiff must allege she disputed the inaccurate information on her credit report with a CRA and the furnisher received notice of her dispute from the CRA, yet failed to reasonably undertake one of its statutory duties in response.  Biggs, 209 F. Supp. 3d at 1143.  In Count One, Plaintiff fails to allege she disputed inaccurate information on her credit report.  Gorman, 584 F.3d at 1163.  (A report entry is "incomplete or inaccurate" within the meaning of FCRA "because it is patently incorrect, or because it is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.")  Instead, the allegations indicate Plaintiff disputed the accuracy of Ocwen's internal accounting records, which did not match Ocwen's reporting to the CRAs.  (Id. ¶ 21 ("Plaintiff . . . disputed the discrepancy and requested that Ocwen report matching current status for both internal and external

records.") (emphasis added).) To state a claim under the FCRA, Plaintiff must be able to point to inaccurate information in her credit report. Count One as pleaded fails to do so.

Additionally, Count One also fails because Plaintiff does not allege Ocwen received notice of her dispute from a CRA. Plaintiff argues it is "highly likely" Ocwen was contacted by the CRA regarding her dispute because CRAs have a duty to notify furnishers of disputes and her March 1, 2016 credit report includes a notation that states "updated from our processing of your dispute in August of 2015." (Opp'n to Ocwen Mot. at 5, Ex. 6.) However, the evidence alleged contradicts Plaintiff's contention. The March 1, 2016 credit report indicates Plaintiff had two accounts with Ocwen, 713053 and 719088. (See Ex. 6.) Account 713053 includes the following notation: "This item was updated from our processing of your dispute in February 2016." (Id.) In contrast, account 719088 includes a different notation: " This item was updated from our processing of your dispute in August 2015." (Id.) Yet, according to the two letters from Ocwen, which Plaintiff asserts demonstrates Ocwen's unlawful conduct, the account at issue was 713053. As a result, the Court cannot reasonably infer from the March 1, 2016 credit report that a CRA notified Ocwen of Plaintiff's dispute of the discrepancy because the information in the report contradicts other information before the Court. Plaintiff thus fails to state a claim in Count One.

**B. Count Two**

Plaintiff next alleges Caliber furnished incomplete and inaccurate information to a CRA and violated § 1681s-2(b)(1)(E)(ii) "by omitting the terms of the settlement agreement in reporting a false late payment history to Experian." (SAC ¶¶ 31-32.) Plaintiff states Caliber reported she was 180 days late on the Loan as of January 2016, while Ocwen reported she was current with a zero balance. (Id. ¶ 27.) Caliber moves to dismiss because Plaintiff fails to allege all of the elements necessary to state her claim.[2] (Caliber Mot. at 6-8.) Specifically, Caliber contends Plaintiff does not allege Caliber reported inaccurate information, that she submitted all relevant information regarding the dispute, or that a CRA notified Caliber of her dispute. (Id.) Despite Caliber's contentions, the Court finds Plaintiff's allegations sufficient to state a claim.

In Count Two, Plaintiff alleges each element of a claim under FCRA. Biggs, 209 F. Supp. 3d at 1143. First, Plaintiff identifies an inaccuracy in her credit report—that she was in arrears with Caliber. (SAC ¶ 27.) Second, she claims to have disputed Caliber's inaccurate report on February 18, 2016. (Id. ¶ 28.) Third, Plaintiff alleges that "[o]n March 1, 2016, Experian reported to Plaintiff that Defendant Caliber claimed its report was accurate and refused to change its credit report," from which the Court may reasonably infer that Experian notified Caliber of the dispute because absent such a notification, Experian would not have been able to report any update to Plaintiff. (Id. ¶ 29.) Fourth, Plaintiff specifically alleges Caliber failed to comply with the requirements of § 1681s-2b(1)(E). (Id. ¶ 32.) Because each element is alleged or may be reasonably inferred from Plaintiff's allegations, Plaintiff states a claim against Caliber in Count Two.

---

[2] Caliber does not differentiate between Count Two and Count Four in arguing that Plaintiff fails to state a claim.

### C. Count Three

In Count Three, Plaintiff claims that Ocwen violated § 1681s-2(a)(1)(A) by reporting multiple late payments that never occurred. (SAC ¶ 33, 36.) Specifically, on March 1, 2016 Plaintiff learned from Experian that Ocwen changed its February 2016 report and reported that Plaintiff was past due for multiple months in 2014 and 2015. (Id. ¶ 33, Ex. 6.) Plaintiff alleges she disputed Ocwen's changed reporting with Experian on March 10, 2016. (Id. ¶ 34.) Plaintiff also provided proof of payment for the time periods for which Ocwen reported her as past due. (Id. Ex. 7.) According to Plaintiff, Ocwen refused to change their reporting and caused Plaintiff to quickly sell the Property at below market value. (Id. ¶ 35.)

Ocwen moves to dismiss Count Three because Plaintiff fails to allege that a CRA contacted Ocwen regarding her dispute or that Ocwen did not conduct a reasonable investigation. (Ocwen Mot. at 7-8.) In response, Plaintiff argues Count Three properly states her claim. First, Plaintiff notes she alleges Ocwen falsely reported her delinquency in her March 1, 2016 credit report. (Id. at 5.) Second, Plaintiff argues it is reasonable to infer Ocwen received notification from a CRA because the CRAs have a duty to notify furnishers of disputes under § 1681i, there are updates to Plaintiff's report, and Ocwen agreed to remove the false delinquency from her report. (Id. at 6.) Third, Plaintiff asserts a reasonable investigation would have resulted in a correction of the false reporting prior to the sale of the Property in May 2016. (Id.) Once again, the Court agrees with Ocwen.

Here, Plaintiff fails to allege that a CRA contacted Ocwen regarding her dispute. Plaintiff does not allege a CRA notified Ocwen of Plaintiff's March 10, 2016 dispute of her March 1, 2016 credit report. Relying on Plaintiff's March 1, 2016 credit report to infer that a CRA notified Ocwen of the dispute at issue in Count Three is particularly inappropriate here because the report predates Plaintiff's dispute—which she alleges occurred on March 10, 2016. Moreover, while the fact that Ocwen agreed to remove the false delinquency indicates the disputed reporting was inaccurate, the evidence indicates that action was taken in response to Plaintiff's contact with the Office of the Consumer Ombudsman, rather than in response to notification by a CRA. Even if the Court were to infer that a CRA notified Ocwen regarding Plaintiff's dispute, Plaintiff would still fail to state a FCRA claim in Count Three, as she also fails to state Ocwen did not conduct a reasonable investigation. As previously discussed, FCRA's private right of action is limited; it may be used to enforce the duties established by § 1681s-2(b) only. 15 U.S.C. §§ 1681n, o; § 1681s-2(c). To state a claim under FCRA then, Plaintiff must allege that Ocwen failed to execute a duty that arose after Ocwen received notice of her dispute from a CRA. Plaintiff fails to do so; thus, Plaintiff fails to state a claim.

### D. Count Four

Plaintiff's final count alleges Caliber violated § 1681s-2(b)(1)(E)(ii) by failing to correct inaccurate information reported on a credit report dated November 30, 2016. (SAC ¶ 37.) Plaintiff claims that this report represented that Caliber reported her more than 180 days late as of June 2016 despite that the Loan had been paid off when the Property was sold in May 2016.

(Id.)  Caliber moves to dismiss Count Four arguing Plaintiff fails to properly state her claim.  (Caliber Mot. at 6-8.)  However, Plaintiff's allegations in Count Four are sufficient to state a claim under FCRA.  Plaintiff alleges her reported past due status in her credit report from November 30, 2016 is inaccurate and that she disputed the inaccuracy with Experian.  (SAC ¶¶ 37.)  Plaintiff also alleges that on December 19, 2016, Caliber advised Experian that it would not change its reporting.  (Id. ¶ 39.)  From that allegation, the Court may infer that Experian notified Caliber of Plaintiff's dispute and that Caliber conducted an investigation, which Plaintiff contends was unreasonable.  Therefore, Plaintiff has sufficiently pleaded a FCRA claim in Count Four.

### E.  California Civil Code § 1785.25(a)

The SAC does not specifically plead a violation of California Civil Code § 1785.25(a).  Yet, Plaintiff states at two points in the SAC that the conduct alleged "is also a violation of California Civil Code § 1785.25(a)."  (SAC ¶¶ 25, 39.)  Additionally, Plaintiff argues at length in her oppositions that she properly pleaded a violation of § 1785.25(a).  (Opp'n to Ocwen Mot. at 1-4; Opp'n to Caliber Mot. at 1-4.)

Whether the conduct alleged in the SAC constitutes a violation of § 1785.25(a) is irrelevant to the Motions presently before the Court.  Plaintiff does not assert a cause of action under § 1785.25(a).  Indeed, she could not assert this cause of action because in granting her leave to amend the FAC, the Court granted leave to amend only as to her claim for a violation of the FCRA—a claim which she added to the FAC despite having not been granted leave to do so originally.  (Dkt. No. 32 at 7.)  Thus, Plaintiff cannot belatedly insert a new cause of action for violation of § 1785.25(a), nor can she seek damages for such a violation.

While a private cause of action may exist under § 1785.25(a), that fact does not alter the Court's analysis regarding her claims as set forth above.  Plaintiff does not state a claim for violation of § 1785.25(a).

### F.  Leave to Amend

If a Rule 12(b)(6) motions is granted, a "district court should grant leave to amend . . . unless it determines that the pleading could not possibly be cured by the allegation of other facts."  Lopez v. Smith, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (internal quotation marks and citations omitted).

Here, Plaintiff has already amended her complaint twice before.  Despite this, Plaintiff has failed to rectify the deficiencies previously identified by this Court.  In light of this, the Court concludes the SAC will not be cured by additional allegations.  Granting Plaintiff further leave to amend would be futile.

//

## V.  CONCLUSION

For the foregoing reasons, the Motion to Dismiss by Ocwen is GRANTED and the SAC is DISMISSED WITHOUT LEAVE TO AMEND as to Ocwen.  The Motion to Dismiss by Caliber is DENIED.  The hearing on May 8, 2017 is VACATED.

**IT IS SO ORDERED.**